UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-61661-CIV-COOKE/TURNOFF

GLENN HERMAN,

      Plaintiff

vs.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

      Defendant,

_____/

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before me on Defendant Hartford Life and Accident Insurance Company's Motion for Summary Judgment (ECF No. 34) and Plaintiff Glenn Herman's Response in Opposition to Defendant's Motion for Summary Judgment (ECF No. 45). I have reviewed the arguments, the record, and the relevant legal authorities. For the reasons explained below the motion is denied.

### I. BACKGROUND

This is an action to recover long-term disability benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1101, *et seq*. ("ERISA"). On October 1, 2004, Hartford Life and Accident Insurance Company ("Hartford") issued a long-term disability policy ("LTD Policy") to Glenn Herman's ("Herman") employer, Tweeter Home Entertainment Group, Inc. ("Tweeter Home"). At all relevant times to the facts at issue, Tweeter Home employed Herman and covered him under the Hartford LTD Policy. Herman suffers from an arteriovenous malformation of the brain. On July 11, 2005, Herman underwent the first of nine surgeries to remove a portion of the malformation, ultimately

rendering him disabled.  On May 4, 2007, Tweeter Home issued a Coverage Certificate Report to Hartford on Herman's long-term disability claims.  Hartford approved Herman's claims and he was assigned a date of disability of April 30, 2007.  On July 29, 2007, following the expiration of a ninety-day elimination period, Herman's long-term disability payments commenced at a rate of $661.25 per month.  In September 2007, the Social Security Administration awarded Herman disability benefits in the amount of $9,181.24.  On or about July 2010, after receiving data from the Social Security Administration about Herman's disability benefits, Hartford reduced Herman's long-term disability payments to $50.00 per month, the minimal amount allowable under the LTD Policy.

## II.  LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The function of the trial court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).  In an ERISA case, however, "the district court sits more as an appellate tribunal than as a trial court."  *Curran v. Kemper Nat. Servs. Inc.*, No. 04-14097, 2005 WL 894840, at *7 (11th Cir. 2005) (quoting *Leahy v. Raytheon Co.*, 315 F.3d 11, 17-18 (1st Cir. 2002)).  The court "does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary."  *Id.*

## III. DISCUSSION

Under 29 U.S.C. § 1132(a)(1)(B), a benefit plan participant may bring a civil action to recover, enforce or clarify his rights to benefits under the terms of the plan.  "[D]enial of benefits

challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  In applying the standard set forth in *Firestone*, the Eleventh Circuit outlined a six-step test for reviewing an administrator's benefits decision as follows:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

> (3) If the administrator's decision is "*de novo* wrong" and he *was* vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

> (5) If there is no conflict, then end the inquiry and affirm the decision.

> (6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

*Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1138 (11th Cir. 2004) *overruled on other grounds by Doyle v. Liberty Life Assurance Co. of Boston*, 542 F.3d 1352, 1356 (11th Cir. 2008); *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010).[1]  The LTD Policy names Tweeter Home as the plan administrator and Hartford as the fiduciary.  As the fiduciary, Hartford had full authority to determine Herman's eligibility for benefits.  The question I must

---

[1] The Supreme Court has called into question the sixth step of this analysis.  *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).  The rest of the analytical framework remains intact. *Capone*, 592 F.3d at 1196.  *Glenn* does not affect the analysis in this case, as I need not reach the sixth step of the analysis.

answer, therefore, is whether the aggregate evidence viewed in the light most favorable to the Herman, could support the Hartford's decision under the deferential ERISA standard set forth above. *See Leahy v. Raytheon Co.*, 315 F.3d 11, 18 (1st Cir. 2002).

### Step One: Was the Fiduciary's Decision "Wrong"?

A court reviews the denial of ERISA benefits *de novo*, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for the benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115. As discussed below, Hartford had full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the LTD Policy. Therefore, I will proceed as if Hartford's decision was in fact wrong. *See Eady v. Am. Cast Iron Pile Co.*, 203 F. App's 326, 328 (11th Cir. 2006).

### Step Two: Did the Fiduciary have Discretion?

Hartford argues that the LTD Policy gives them discretion to reduce Herman's monthly benefits if he receives "other income benefits," i.e., the amount of any benefit for loss of income during a disability period. In order to calculate long-term disability benefits, the LTD Policy sets forth the following steps: (1) multiply the pre-disability earnings by the benefit percentage; (2) compare the result with the maximum disability benefit; and (3) from the lesser amount, deduct other income benefits. Pursuant to the terms of the LTD Policy, Hartford had discretion to reduce Herman's disability payments by any amount Herman received from the Social Security Administration.

### Step Three: Do Reasonable Grounds Support the Fiduciary's Decision?

Hartford's decision to reduce Herman's benefits must be analyzed under the arbitrary and capricious standard of review, limited to "consideration of the material available to [Hartford] at the time it made its decision." *Oliver v. Coca Cola Co.*, 497 F.3d 1181, 1195 (11th Cir. 2007),

*vacated in part on other grounds*, 506 F.3d 1316 (11th Cir. 2007) (internal quotations omitted). My review, therefore, is limited to whether reasonable grounds exist to support Hartford's reduction of Herman's benefits based on the administrative record before it. Herman not only challenges the reduction of his benefits, but the initial assignment of disability benefits as well. Accordingly, my analysis will begin with Hartford's initial benefits calculation.

To determine whether a fiduciary's decision regarding disability benefits was arbitrary and capricious, a court must begin with the language of the plan itself. *Oliver*, 497 F.3d at 1195. The LTD Policy at issue allows a plan participant to receive disability benefits if, during an "elimination period," the plan participant is unable to work due to accidental bodily injury, sickness, substance abuse or pregnancy. The elimination period is defined to be the first 90 consecutive days of any one period of disability. It is "the period of time a plan participant must be disabled before benefits become payable." The LTD Policy further provides that in order for benefits to become effective, the plan participant must provide notice "within the first 30 days of an absence due to the same or related disability."

Herman argues that the date of disability was assigned arbitrarily and capriciously. I agree. The record reflects that Herman provided Hartford with a notice of disability in October 2005. The record also evidences that Herman's physicians provided disability statements from 2005 to 2007 and that Hartford refused to modify Herman's April 30, 2007 disability date after Herman made repeated requests to do so. Based on my review of the administrative record, I find Hartford's interpretation and application of the LTD Policy to be unreasonable. Under the LTD Policy rules, Herman was eligible to receive disability benefits in 2005. As a fiduciary, Hartford was "required to make a reasoned determination after a *diligent* investigation." *Capone*, 592 F.3d at 1200 (emphasis added). It is not clear what standards or factors Hartford

5

took into consideration when assigning the disability start date. Hartford reviewed the medical records of several doctors in making the initial disability benefits decision. All doctors indicated that Herman had been unable to work since his brain surgery in 2005. The medical reports also indicated that Herman was unable to engage in normal activities of daily life. Herman's medical background calls into question whether Tweeter Home acted in bad faith when it submitted Herman's disability coverage report in 2007, and whether Hartford acted in bad faith when it assigned Herman the 2007 disability date.

### *Step Four: Reversal of the Fiduciary's Decision*

Hartford has not presented sufficient evidence as to why Herman was not assigned a 2005 disability start date. Having determined that Hartford's decision was unreasonable, I am required to end the inquiry and reverse Hartford's decision.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that Hartford's Motion for Summary Judgment (ECF No. 34) is **DENIED**. Herman's disability coverage claims are remanded to Hartford for further consideration consistent with this Order. The Clerk is directed to **CLOSE** this case. All pending motions are **DENIED** *as moot*.

**DONE and ORDERED** in chambers at Miami, Florida this 9th day of August 2011.

MARCIA G. COOKE
United States District Judge