UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-61661-CIV-COOKE/TURNOFF

GLENN HERMAN,

    Plaintiff

vs.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

    Defendant.
_____/

## ORDER GRANTING MOTION FOR RECONSIDERATION

THIS MATTER is before me on Defendant's Motion for Reconsideration of Order Denying Defendant's Motion for Summary Judgment. (ECF No. 75). I have reviewed the record, the arguments and the relevant legal authorities. For the reasons stated below, the Motion for Reconsideration is granted.

**Procedural History**

This is an action to recover long-term disability benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101, *et seq.* ("ERISA"). Plaintiff Glenn Herman suffers from an arteriovenous malformation of the brain. On August 18, 2010, Mr. Herman filed suit against Defendant Hartford Life and Accident Insurance Company ("Hartford") in state court. The case was removed to this Court on September 9, 2010, pursuant to 28 U.S.C. §§ 1331 and 1441. In his Complaint, Mr. Herman alleged that Hartford committed bad faith in reducing his long-term disability ("LTD") benefits (Count I). Mr. Herman also sought a declaratory decree establishing that he was entitled to recover certain LTD benefits for his arteriovenous

malformation (Count II).  In relying on the evidence available in the record at the time of summary disposition, I denied Hartford's Motion for Summary Judgment because I found the assigned disability date to be arbitrary and capricious.  Hartford has filed a Motion for Reconsideration, asserting that the Court relied upon misstated and misunderstood facts, which Hartford now attempts to clarify.

## Clarified Factual Background

On July 11, 2005, Mr. Herman underwent the first of nine surgeries to remove a portion of the arteriovenous malformation, and applied for LTD benefits under a disability policy (the "Policy") issued by Hartford.  On October 20, 2005, Mr. Herman's neurosurgeon, Dr. Robert Mericle, completed Mr. Herman's disability forms.  On July 12, 2006, Hartford classified Mr. Herman's malformation as a pre-existing condition and denied the LTD benefits claim.  As required by ERISA, Hartford's denial letter advised Mr. Herman of his right to appeal the decision within 180 days.  Mr. Herman did not appeal the decision and returned to work as a full-time employee after his first round of surgeries, working 40 hours per week.  On April 30 2007, Mr. Herman was clinically diagnosed with depression.  On May 3, 2007, Mr. Herman applied for short-term disability ("STD") benefits under the Policy.  Hartford approved Mr. Herman's STD benefits, assigned Mr. Herman a disability date of April 30, 2007, and began issuing disability benefits on July 29, 2007.  In September 2007, the Social Security Administration awarded Mr. Herman disability benefits in the lump sum of $9,181.24.  On April 14, 2009, Hartford approved Mr. Herman's LTD claim for depression at a rate of $661.25 per month.  In July 2010, however, after receiving information about Mr. Herman's Social Security disability benefits, Hartford reduced Mr. Herman's LTD payments to $50.00 per month, which is the minimal amount allowable under the LTD Policy.

Mr. Herman claims that Hartford arbitrarily assigned a 2007 disability date for his 2005 disability claim. Hartford argues that reconsideration is proper because the assignment of Mr. Herman's 2007 disability date is based upon a his 2007 clinical depression disability, and is separate and distinct from Mr. Herman's 2005 malformation disability claim.[1] Although the Complaint states that Mr. Herman's cause of action arose from the 2007 disability claim, subsequent pleadings, including Mr. Herman's statement of claim, integrate injuries from his 2005 diagnosis into the present disability claim, resulting in a misunderstanding of the factual timeline and confusion of legal issues.

## Legal Standards

A court may relieve a party from a final judgment, order, or proceeding for misstate or excusable neglect, or any other justified reason. Fed. R. Civ. P. 60(b)(1) and (6). To this effect, a district court should grant a motion for reconsideration when: (1) there is an intervening change in controlling law; (2) new evidence is available; or (3) there is a need to correct clear error or prevent manifest injustice. *See Sanzone v. Hartford Life and Acc. Ins. Co.*, 519 F. Supp. 2d 1250, 1255 (S.D. Fla. 2007) (citing *Burger King Corp. v. Ashland Equities, Inc.,* 181 F. Supp. 2d 1366,

---

[1] Mr. Herman's Response in Opposition to the Motion for Reconsideration (ECF No. 76) does not dispute the factual substance of Hartford's request for relief. Rather, Mr. Herman's Response misstates the relevant facts, misapplies the relevant law, and focuses on irrelevant issues. Specifically, Mr. Herman contends that the Motion for Reconsideration should be denied because Hartford relies upon the affidavit of an employee who Mr. Herman was unable to depose. What Mr. Herman fails to acknowledge is that his inability to depose the employee was due to his counsel's failure to abide by the discovery rules and orders of this Court. Discovery in an ERISA disability case is permissible on a limited basis, with focus on the claim administrator's decision-making. *See Rosser-Monahan v. Avon Products, Inc.*, 227 F.R.D. 695, 698 (M.D. Fla. 2004); *Lake v. Hartford Life & Acc. Ins. Co.*, 218 F.R.D. 260, 261 (M.D. Fla. 2003); *Cerrito v. Liberty Life Assurance Co. of Boston*, 209 F.R.D. 663, 664 (M.D. Fla. 2002); *Conkright v. Frommert*, 130 S. Ct. 1640 (2010). Mr. Herman failed to limit the scope of discovery. Moreover, Mr. Herman informed Hartford of his intent to depose Hartford's employees 74 days after the expiration of fact discovery, and 12 days after the close of expert discovery. Although Hartford filed motions for protective orders, Mr. Herman voluntarily cancelled the depositions. (*See* ECF No. 67).

1369 (S.D. Fla. 2002)). The motion is appropriate where a court has "patently misunderstood a party, or has made a decision outside of the adversarial issues presented to the Court by the parties, or has made an error not of reasoning, but of apprehension . . ." *Id*. at 1255–56.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is not the trial court's job to weigh the evidence, but rather to determine whether there is a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50. However, the summary judgment analysis differs in an ERISA action, where "the district court sits more as an appellate tribunal than as a trial court." *Curran v. Kemper Nat. Servs. Inc.*, No. 04-14097, 2005 WL 894840, at *7 (11th Cir. 2005) (internal quotations omitted). The court "does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." *Id*.

## Discussion

An ERISA benefit plan participant may bring a civil action to recover, enforce or clarify his rights to benefits under the terms of the plan. 28 U.S.C. § 1132(a)(1)(B). The "denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard of review unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Hunt v. Hawthorne Assoc., Inc.,* 119 F.3d 888, 912 (11th Cir. 1997). "ERISA provides no standard for reviewing decisions of plan administrators or fiduciaries." *Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1138 (11th Cir. 2004) (overruled on other grounds by *Doyle v. Liberty Life Assurance Co. of Boston*, 542 F.3d 1352,

4

1356 (11th Cir. 2008)). In applying the standard set forth in *Firestone*, the Eleventh Circuit has articulated a six-step analysis for reviewing an administrator's benefits decision:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end the judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

*Id.* at 1138; *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010).[2] Under the terms of the Policy, Tweeter Home Entertainment Group, Inc. ("Tweeter Home"), Mr. Herman's employer, is the named plan administrator and Hartford is the named fiduciary. As the fiduciary, Hartford had full authority to determine Herman's eligibility for benefits. I must now consider whether the aggregate evidence, viewed in the light most favorable to Mr. Herman, could support Hartford's decision under the deferential ERISA standards set forth above. *See Leahy v. Raytheon Co.*, 315 F.3d 11, 18 (1st Cir. 2002).

---

[2] The Supreme Court has questioned the sixth step of this analysis. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). The Eleventh Circuit has recently recognized that the "heightened arbitrary and capricious standard" is not required by *Firestone* and was implicitly overruled in *Glenn*. See *Doyle v. Liberty Life Assurance Co. of Boston*, 542 F.3d 1352 (11th Cir. 2008).

*Step One:  Was the Fiduciary's Decision "Wrong"?*

A court reviews the denial of ERISA benefits *de novo*, unless the benefit plan gives the fiduciary authority to determine eligibility benefits or to construe the terms of the plan. *Firestone*, 489 U.S. at 115.  As discussed below, Hartford had full discretion and authority to determine eligibility for benefits and construe the terms and provisions of the LTD policy. Therefore, I will proceed as if Hartford's decision was in fact wrong.  *See Eady v. Am. Cast Iron Pipe Co.*, 203 F. App'x 326, 328 (11th Cir. 2006).

*Step Two:  Did the Fiduciary have Discretion?*

Hartford argues that the Policy gives it discretion to reduce Mr. Herman's monthly benefits if he receives "other income benefits," including social security disability payments. The Policy sets forth the following steps for the calculating long-term benefits:  (1) multiply the pre-disability earnings by the benefit percentage, (2) compare the result with the maximum disability benefit, and (3) from the lesser amount, deduct other income benefits.  Tweeter Home granted Hartford full discretion and authority to determine eligibility and to interpret the terms of the Policy.  Pursuant to the Policy, Hartford did in fact have discretion to reduce Mr. Herman's disability payments by any amount Mr. Herman received from the Social Security Administration.

*Step Three:  Do Reasonable Grounds Support the Fiduciary's Decision?*

Hartford's decision to reduce Mr. Herman's benefits must be analyzed under the arbitrary and capricious standard of review, limited to "consideration of the material available to [Hartford] at the time it made its decision."  *Oliver v. Coca Cola Co.*, 497 F.3d 1181, 1195 (11th Cir. 2007) (*vacated in part on other grounds*, 506 F.3d 1316 (11th Cir. 2007) (internal quotations

omitted)).  The review is therefore limited to whether reasonable grounds exist to support Hartford's reduction of Mr. Herman's benefits based on the administrative record.

To determine whether a fiduciary's decision regarding benefits was arbitrary and capricious, a court must begin with the language of the plan itself.  *Oliver*, 497 F.3d at 1195. The Policy allows a plan participant to receive disability benefits if, during an "elimination period," the plan participant is unable to work due to accidental bodily injury, sickness, substance abuse, or pregnancy.  (*See* Group Benefit Plan, ECF No. 1-2).  The elimination period is defined as the first consecutive 90 days of any one period of disability.  It is "the period of time a plan participant must be disabled before benefits become payable", and the plan participant is required to provide notice "within the first 30 days of an absence due to the same or related disability."  (*Id.*).

Mr. Herman argues that the assigned 2007 disability date was arbitrary and capricious. The record reflects that Mr. Herman was diagnosed with clinical depression on April 30, 2007, and that he made a telephonic request for STD benefits on May 3, 2007.  Hartford approved Mr. Herman's STD benefits on May 4, 2007, and set the disability date as the day of diagnosis. Based on the 2007 claim, Hartford approved Mr. Herman's subsequent LTD claim on April 14, 2009.  The administrative record establishes reasonable grounds for Hartford's interpretation and application of the Policy. The disability date is neither arbitrary nor capricious.

***Step Four:  Did the Fiduciary Operate Under a Conflict of Interest?***

The fourth step of the analysis is to consider whether the fiduciary operated under a conflict of interest.  A conflict of interest may arise where a party is responsible for both determining eligibility and paying benefits.  *See Doyle*, 511 F.3d at 1359; *Williams*, 373 F.3d at 1136.  In this case, Tweeter Home is responsible for establishing and maintaining the benefits

plan.  Hartford is responsible for determining eligibility and paying claims.  The Policy itself gives Hartford full discretion and authority to determine eligibility and interpret the policy provisions.  Hartford is also responsible for paying benefits to Tweeter Home's employees.  Under these facts, a structural conflict of interest exists between Hartford's fiduciary and profit-making interests, since Hartford is responsible for determining eligibility and paying benefits.

***Step Five:  Did Hartford's Conflict of Interest Impact Its Benefits Determination?***

The existence of a conflict of interest is not dispositive; rather, a conflict of interest is simply one factor to be considered.  *See Firestone*, 489 U.S. at 115.  Further, the conflict of interest is to be evaluated on a case-specific basis, and not under a heightened standard of review.  *Glenn*, 554 U.S. at 116–17; *Miller v. Prudential Ins. Co. of Am.*, 625 F. Supp. 2d. 1256, 1262 (S.D. Fla. 2008).  I must therefore determine whether the conflict of interest tainted Hartford's decisions regarding the reduction of Mr. Herman's disability benefits.  *See Miller*, 625 F. Supp. 2d. at 1266.  In considering the weight of this factor, a court may give the conflict of interest low importance when the administrative record lacks evidence of "malice, self dealing, a parsimonious claims granting history, or other circumstances suggesting a higher likelihood that the structural conflict affected the benefits decision."  *Id*.

There is no evidence in the administrative record that the conflict of interest affected Hartford's decision to set the disability date and to subsequently reduce benefits.  There are reasonable grounds to support the 2007 disability date.  Further, Hartford's decision to reduce benefits following Mr. Herman's receipt of individual Social Security disability benefits is not arbitrary and capricious.  Mr. Herman possessed full knowledge of the Policy provisions before he enrolled in the Policy, and agreed to reimburse overpayments prior to receiving the disability benefits.  Moreover, Mr. Herman is unable to assert a cause of action based upon his 2005

8

disability claim. The law is well-settled that ERISA plaintiffs "must exhaust available administrative remedies before suing in federal court." *Perrino v. Southern Bell Tel. & Tel. Co.*, 209 F. 3d 1309, 1315 (11th Cir. 2000) (citations omitted). By failing to appeal Hartford's 2005 determination of benefits, Mr. Herman failed to exhaust his administrative remedies as a jurisdictional prerequisite to filing suit in federal court.

## Conclusion

For the foregoing reasons, it is **ORDERED and ADJUDGED** that Hartford's Motion for Reconsideration (ECF No. 75) is **GRANTED**. The Order Denying Hartford's Motion for Summary Judgment (ECF No. 72) is **VACATED** and summary judgment is GRANTED in favor of Hartford. This Court shall issue a separate judgment pursuant to Fed. R. Civ. P. 58.

**DONE and ORDERED** in chambers at Miami, Florida this 26th day of March 2012.

*Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

Copies furnished to:

*Counsel of Record*